Hall et al v. Brewer et al.

------

## HALL ET AL VS. BREWER ET AL.

1. CLAIMS AGAINST ESTATES: *When enforced in equity: Liens.*
   The death of a decedent fixes a lien upon his lands for the payment of his debts, and they pass to his heirs or devisees charged with such debts; and where a creditor's debt has been

duly probated and not paid, or has come into existence too late to be probated, or after the administration has been closed, he may in equity subject them in the hands of the heirs or devisees or their alienees, to the payment of the debt. Sec. 153 Gantt's Digest is merely declaratory of what the law was before.

2. ADMINISTRATION: *Jurisdiction. Effect of the Constitution of 1874.* The Constitution of 1874 restored the Probate system as it existed under the Constitution of 1836, revesting in the Probate Court the same jurisdiction in matters of administration which had been transferred from them to the Circuit Courts, and no more.

3. PARTIES: *In bill to enforce debt against heirs or devisees:* In a bill by a creditor of an estate to collect his debt out of assets descended to the heirs or devisees, the administrator or executor is not a necessary or proper party.

4. ADMINISTRATION: *Devastavit. Suit on bond of Administrator:* There can be no devastavit of an administrator for which a creditor may sue on his bond, until an order to pay creditors has been made by the Probate Court and violated by him.

5. BONA FIDE PURCHASER: *Plea of, by vendee of heir against creditor of estate:* It may well be doubted whether a plea of *bona fide* purchaser for value is available to the vendee of an heir or devisee against a creditor of an estate suing to subject the land to his debt, as the defect in his title arises out of a rule of law, of which he is bound to take notice.

6. ADMINISTRATION: *Waste by administrator:* Waste by the administrator of personal assets sufficient to pay the creditor's debt is no defense to his suit to subject lands to its payment which have descended to the heir.

APPEAL from *White* Circuit Count in Chancery.

HON. S. W. WILLIAMS Special Judge.

*B. D. Turner* for appellant.

The Chancellor mistook the case in holding that it was simply an application to sell a deceased's lands for payment of debts, and within the exclusive jurisdiction of the Probate Court. It *was* an application to sell lands, but lands

Hall et al v. Brewer et al.

that had passed away from the executors into the hands of the devisees and their vendees, clothed with an equitable lien and trust for the payment of the plaintiff's claim, and was peculiarly within the jurisdiction of equity. The right of a creditor to proceed in *equity* against an heir or devisee who has received his ancestor's estate, for satisfaction of his claim which has accrued after the time limited for authenticating it against the administrator, or after the administration has closed, has been frequently recognized by this Court. *Walker v. Byers*, 14 *Ark.*, 256; *Byrd v. Belding*, 18 *Ark.*, 118; *Bennett v. Dawson*, 15 *Ark.*, 112; *S. C.* 18 *Ark.*, 324.

When *lands* are received by the heir equity will seize the *rem*, the land itself, and apply it specifically to the payment of the debt, and if necessary willrender a personal decree to the value of personal assets received. *Williams et al v. Ewing et al*, 31 *Ark.*, 229 *Kendricks v. Kesee*, 32 *Ark.*, 714. These cases were decided since the adoption of the present Constitution, which appellees claim vests *exclusive jurisdiction* in the Probate Court. But this is a stronger case. Here the lands have passed to other parties; a marshaling of assets, adjustment of equities and distribution of the burden is necessary. A sale by the Probate Court would effect nothing.

By death the deceased's debts 'became liens upon his real estate, which may be pursued in equity against the heir or his *bona fide* purchaser. *Rawle on Cov.* 546, *and cases cited; Jackson v. McNabb,* 39 *Ark.*, 111. The lands are held by defendants as a trust fund, with lien for the payment of the debt, and the enforcement of the trust is the peculiar province of equity. *Hill on Trusts*, 274, *Note* 1; *Riddle v. Mandeville*, 5 *Cranch*, 329.

Plaintiffs are entitled to a personal decree against the heirs and legatees to the extent of assets received. It makes

no difference that there was no specific prayer for such relief. There was a prayer for general relief, under which any decree could be rendered that the facts stated would justify. *Shields v. Trammell*, 19 *Ark.*, 62; *Dews v. Cornish*, 20 *Ark.*, 332; *Kelly v. McGuire*, 15 *Ib.* 556; *Cook v. Bronaugh*, 13 *Ib.*, 183.

If the executors were improper parties, they could easily have been stricken out on motion.

It is urged that the sufficiency of the personal assets of Brewer, at the time of his death, to pay all of his debts, and their subsequent distribution by the executors between the devisees and creditors of his estate, exonerates the land, and confines the appellant to an action on the bond of the executors and their sureties, etc. But lands are assets in the hands of an administrator for the payment of debts, and the heir has no right or title to them until the debts are all paid. *Menefee v. Menefee*, 8 *Ark.*, 48; *Carnall v. Wilson*, 21 *Ib.*, 62; *Haynes v. Besselieu*, 25 *Ib.*, 501; *Tate v. Norton*, 94 *U. S.*, 746; *Howell v. Duke, MS. op. of this Court*. In the latter case the Court say: "an heir or devisee takes the estate subject to the debts of his ancestor or testator, and he can transfer no greater right or interest to another than he himself possesses," etc. See also *Nathan v. Lehman, Abraham & Co.* 39 *Ark.*, 256. Waste of personal assets does not exonerate lands.

Appellees purchased their lands during the litigation of a claim which existed at the time of Brewer's death, which was notice to them.

*W. R. Coody* and *J. W. House* for appellees.

1.  Under our present Constitution a Court of Equity has no jurisdiction to order a sale of lands for the payment of debts of a decedent's estate. The Probate Court has *exclusive jurisdiction*. *Art.* 7, *Sec.* 34 *Cons. of* 1874; *Reinhardt v. Gastrell*, 33 *Ark.*, 728-9; 26 *Ark.*, 529.

Hall et al v. Brewer et al.

This is an application *to sell lands, create and apply assets,* not merely to correct *frauds,* and distribute assets already collected and in custody of the Court.' *Ib.* 729; *West and wife v. Waddill,* 33 *Ark.,* 581; *Mock v. Pleasants,* 34 *Ark.,* 71.

The Chancery Court having determined the rights and liabilities of the parties, etc., etc., they must be *remanded* to the Probate Court. *Shegog v. Perkins,* 34 *Ark.,* 127-8. Courts of Chancery only interfere for *fraud,* and when that is rectified *they retire. Jones v. Graham,* 36 *Ark.,* 390.

2.  No note was given under *act* 1877, *p.* 5.

3.  There is no allegation of want of assets at *the time of the death* of Brewer. It is only when the personal assets *at the time of the death of a party* are not sufficient to pay the debts, that the lands can be resorted to. *Gantt's Dig., Sec.* 168. See also Miss. decisions upon similar statute. *Turner v. Ellis,* 24 *Miss.,* (2 *Cush.*) 179-80; *Paine v. Pendleton,* 32 *Miss.,* (3 *George*) 323-4.

All claims are barred by non-claim if not presented in two years. Claims coming into existence *afterwards* can only be enforced against the heirs and distributees receiving assets, *as such,* and to the extent of the amount received, as an equity superior to theirs. 14 *Ark.,* 253-4; 33 *Ark.,* 662; 32 *Ark.,* 716-17; 31 *Ark.,* 234; *Gantt's Dig., Sec.* 153.

Lands are only assets *in the hands* of executors, etc., when they pass out of their control into the hands of heirs or purchasers they are *no longer assets. Gantt's Digest, Secs.* 68 *and* 152.

See also *Gantt's Digest, Sec.* 170, *and* 32 *Miss.,* 323-4.

SMITH, J. The bill in this case alleged that in the year 1867, Jesse D. Hall, the ancestor of the plaintiffs, brought an action of ejectment against Bradford Brewer, the testator of some of the defendants, for a tract of land and mesne profits; that upon the filing of an equitable defense by

Brewer, the cause was transferred to Chancery; that during the pendency of the suit, the original parties, plaintiff and defendant, had both died and the cause was revived in the names of Hall's heirs against Brewer's executors and devisees; and that a decree was finally rendered in favor of the plaintiffs for the land and about $2200 of accrued rents. For a more particular history of that litigation, see *Brewer v. Hall*, 36 *Ark.*, 334.

The bill further stated that a copy of this decree had been filed and allowed in the Probate Court as a fourth-class claim against the estate of Brewer; that all the other debts of the deceased had been paid; that he had left a large estate in lands and personalty; that his executors had fully administered the personal property in paying the debts and legacies of the testator and had surrendered the lands to the devisees before said decree was obtained, and these devisees had sold and conveyed portions of the land to various parties and the executors and their sureties were insolvent or bankrupt or dead or out of the jurisdiction.

The lands of which Brewer had died seized and which had passed into the hands of his devisees were described and it was shown that such of them as had been devised by Brewer to certain of the defendants in common had been subsequently divided and set out to them in severalty upon a decree of partition rendered by the White Circuit Court.

To this bill a demurrer was filed, alleging that Chancery had no jurisdiction, the Probate Court having exclusive cognizance of matters of this nature, and that this being a proceeding to sell lands for the payment of the debts of a decedent, the creditor had not complied with the statute in the form of the application and in the publication of notice of his intention to apply. Furthermore, that the bill failed to show that sufficient personal assets had not once been in the

Hall et al v. Brewer et al.

hands of the executor to pay this debt, if the same had been properly administered.

Upon the hearing of this demurrer, the bill was dismissed, the Court being of opinion that it had no jurisdiction to decree the sale of lands for the payment of the debts of a decedent.

The bill is not framed with a view to compel the executors to sell the lands of the testator and apply the proceeds to the payment of his debts. But it proceeds upon the distinct idea that, as the equity of a creditor in the estate of his deceased debtor is superior to that of heirs, devisees, legatees and distributees, he may follow the assets into their hands as a trust fund for the payment of his debt. Since they are not entitled to anything, except the surplus of the assets after all debts are paid, if they receive any part of the estate prematurely, a Court of Equity treats them as constructive trustees for the creditor. *Story Eq. Jur., sec.* 1251; *Perry on Trusts, see.* 244.

This is in one sense a proceeding to subject lands of a deceased person to sale for the satisfaction of a debt. But so is every bill for the foreclosure of a mortgage or vendor's lien against the representative of a deceased mortgagor or vendee. The prayer is always for a condemnation to sale in default of payment by a day certain. The same may be said of many bills for the enforcement of trusts or equitable charges. And such is the essential nature of the present bill. Brewer's lands being assets for the payment of his debts, his death fixed a lien upon them and they passed to his devisees charged with such debts. *Rawle on cov. for title,* 54y, 4th Ed.

In *Wilson v. Harris,* 13 *Ark.,* 559, Wilson had obtained an allowance of a demand against the estate of Harris in the Probate Court of Arkansas county. Afterwards Desha county was established out of the territory of the first named county, and the estate of Harris, with the residence of his ad-

*[margin note: 1. CLAIMS AGAINST ESTATES. When enforced in equity.]*

*[margin note: Lien fixed on lands by death of decedent.]*

ministrator, widow and heirs, was in the new county. The administrator removed his administration to Desha, made a final settlement, turned over the residue of the estate to the widow and heirs of Harris, taking no notice of Wilson's claim, and was discharged. Wilson filed his bill against the widow and heirs of Harris, who had received his estate, for contribution and payment of his demand. The Circuit Court could not see in the bill any title to equitable relief. But Chief Justice Watkins, delivering the opinion of this Court, said: "It is clear that, upon the facts stated, the Court of Chancery had jurisdiction to enforce payment of the allowance in the complainant's favor, against the estate of the intestate, out of assets which came to the hands of his heirs, and we are unable to see upon what grounds the Circuit Court dismissed the bill."

In *Bennett v. Dawson*, 15 *Ark.*, 412, *and* 18 *Id.* 334; *in Walker v. Byers*, 14 *Id.*, 253; *and Byrd v. Belding*, 18 *Id.*, 118, the right of a creditor to proceed in equity against the heir who has received his ancestor's estate, for satisfaction of his claim which has accrued after the time limited for authenticating it against the administrator, or after the close of his administration, was distinctly recognized.

Thus stood our adjudications when the Code of Civil Procedure wa enacted. That Code contained the following provision: "Legatees and distributees shall be liable to a direct action by a creditor, to the extent of the estate received by each of them, notwithstanding the failure of the creditor to appear and the discharge of the personal representative; and that liability shall continue for the same period that the liability of the personal representative would have continued but for said discharge." *Gantt's Dig.*, *sec.* 153.

This provision was interjected into our law without much reference to its consistency with our system of administration, of which the Code-makers were ignorant. It would

Hall et al v. Brewer et al.

seem to countenance the idea that the creditor may lay by and neglect to exhibit his demand to the administrator and yet pursue the assets in the hands of the heir. But in *Patterson v. McCann*, 39 *Ark.*, 577, we have recently decided that the law upon this subject is the same now that it was when the decision in *Bennett v. Dawson*, 18 *Ark.*, 334, was promulgated, and that a claim against an estate, once barred by the statute of non-claim, cannot afterwards be successfully prosecuted to recovery against the heirs of distributees to whom assets have descended. And the above-quoted statute must be held as simply declaratory of what the law is and always was in this State, viz: that the creditor, whose claim has been duly proved, but never satisfied, or whose claim has come into existence too late to be proved, or after the administration has been closed, may in equity subject the assets descended to his heirs to the payment of his debt. *Williams v. Ewing*, 31 *Ark.*, 229; *Tate v. Norton*, 94 *U. S.* 746.

But the Court below may have supposed that the Constitution of 1874 had altered the respective jurisdictions of the Probate and Circuit Courts. Sec. 34 of Art. VII. of that instrument gives to the Judge of the County Court, who is ex-officio Judge of Probate; "such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind, as is now vested in the Circuit Court, or may be hereafter prescribed by law."

2. ADMIN-ISTRATION: Jurisdiction. Effect of constitution 1874.

At the time of the adoption of this Constitution, the Probate Courts had been abolished and their jurisdiction had been transferred to the Circuit Court. The constitutional convention intended to restore the Probate system as it existed under the Constitution of 1836 and to revest in them the same jurisdiction in matters pertaining to the administration of es-

tates, which had formerly belonged to them, but which since their abolition was exercised by the Circuit Courts.

That this is the true construction of the constitutional provision may be seen by an examination and comparison of the following cases:  *West v. Waddill*, 33 *Ark.*, 575; *Reinhardt v. Gartrell*, *Id.*, 727;  *Mock v. Pleasants*, 34 *Id.*, 63;  *Shegog v. Perkins, Id.*, 117; *Jones v. Graham*, 36 *Id.*, 383.

The same conclusion results from the reason of the thing. Sec. 15 of the same Article of the Constitution vests jurisdiction, in effect conclusive, in the Circuit Court in matters of equity.    This means in all cases where adequate relief can not be had by the ordinary course of proceedings at law. *Gantt's Dig., sec.* 1183.   *Hempstead v. Watkins*, 6 *Ark.*, 317.

Now it is obvious that the Probate Court is not provided with any machinery to adjust complicated questions of priorities, rights to contribution and marshalling of assets.    It has no scales to weigh such nice equities.    Accordingly, this Court, in *Hendricks v. Keesee*, 32 *Ark.*, 714, which was a case that arose since the adoption of the present Constitution, held that equity alone has jurisdiction of a suit based upon the contract of the ancestor and prosecuted against the heir to whom assets have descended.

3. PARTIES: In bill to enforce debt against heirs or devisees.   Nor does it affect the jurisdiction that Brewer's executors were joined as parties defendants.   They were not necessary nor even proper defendants.   No relief was prayed against them and none could have been administered in that suit. *Williams v. Ewing*, 31 *Ark.*, 229.

DEVASTAVIT: Suit on bond of administrator.   It has been suggested in argument here that the plaintiff's remedy was to go against the executors and the sureties on their bond.   But according to the laws of this State, there can be no *devastavit* which will sustain an action by a creditor of an estate until an order to pay creditors has been made by the Probate Court and violated by the administrator. *Outlaw v. Yell*, 5 *Ark.*, 468;  *Gordon v. State*, 11 *Id.*, 12; *Baker v. State*, 21 *Id.*, 405.

But the objection is futile for another reason. If these executors could be sued and should be compelled to pay the plaintiff's debt, they might immediately recover the amount so paid of the devisees, to whom property had been prematurely delivered. *Story Eq. Ju., p.* 1251.

It is also urged, in support of the judgment below, that some of the lands which the plaintiff seeks to reach have passed into the hands of innocent parties who had no knowledge of the plaintiff's equity. No question of purchase for value without notice is now before us. The bill does not admit that these purchasers are entitled to protection. And such a defense could only be presented by answer. But it may well be doubted whether the plea of a *bona fide* purchaser for value is available when the defects in the title arise out of a rule of law, of which the defendant is bound to take notice. *Root v. Shields, Woolworth,* 340.

4. Innocent purchaser.

Our statute makes lands assets in the hands of the executor or administrator for the payment of debts. The title descends to the heir, subject to this burden. The devisee's estate in the lands is likewise dependent upon the contingency that the testator had personal property sufficient to meet his debts and liabilities. *Gantt's Dig., sec.* 68, 2162; *Haynes v. Bussellieu,* 25 *Ark.,* 499; *Reynolds v. Canal Co.,* 30 *Id.,* 524; *Tate v. Jay,* 31 *Id.,* 579; *Howell v. Duke, Ante.* 102.

Upon the point whether the rights of the creditor can be enforced, within statutory limitations as to time, against lands in the hands of alienees from the heir, the following cases may be profitably consulted: *Gore v. Brazier,* 3 *Mass.,* 523; *Graff v. Smith,* 1 *Dallas,* 501, *Morris v. Smith,* 1 *Yeates,* 244; *Ricard v. Williams,* 7 *Wheat.,* 59; *Griswold v. Bigelow,* 6 *Conn.,* 268.

We have no occasion to consider at any length the cause of demurrer which assigned that the bill does not negative the idea that sufficient personalty had not come to the hands

5. Waste by administrator.

of the executors to pay the plaintiff's debt, if it had been faithfully applied. The bill alleges that there are no personal assets belonging to Brewer's estate now in the hands of these executors; and tha tif there ever were any, they were paid out upon other liabilities of the testator, or have been turned over to his legatees or have been wasted. The bill shows the exhaustion of all the assets except the lands. Upon the principle that all things will be presumed to have been regularly done, we take it for granted that the Probate Court has from time to time required these fiduciaries to settle their accounts. And the accounts so settled by that Court can not be collaterally drawn in question, but are conclusive until impeached for fraud by bill in equity, filed for that specific purpose. *Gantt's Digest, Sec.* 128; *Dooley v. Dooly,* 14 *Ark.,* 124; *Clark v. Shelton,* 16 *Id.* 480.

Moreover, if there has been any mal-administration of the trusts, this is a matter that more nearly concerns the executors and the devisees than the present plaintiff. The litigation concerning the validity and justice of his demand was not terminated until the estate had been practically wound up. He has had no control over the doings of these trustees, and cannot be held accountable for their shortcomings.

But the bill was not dismissed upon any such notion as this, but upon the ground of exclusive original jurisdiction in the Court of Probate. And to this we reply that it is not a detail of administration, but a matter of trust.

The decree of the White Circuit Court is reversed and the cause remanded with directions to require the defendants to answer the bill.