78  193
80  289
80  291
d82  467

78  193
c89  503

COULTER *v.* SYPERT.

Opinion delivered March 17, 1906.

1. INFANTS—CUSTODY.—While the custody of an infant is generally awarded to the father, as being its natural protector, the courts are not bound to deliver the infant into the custody of the father or of any other person, but will investigate all the circumstances, and act according to sound discretion, as the welfare of the child appears to require. (Page 195.)

2 SAME—WHEN FATHER NOT ENTITLED TO CUSTODY.—A child of ten will not be removed from the custody of its grandparents to that of its father if he has shown no attachment for it, contributed nothing to its maintenance and support, and displayed no disposition or ability to discharge the duties of a father, while they have taken care of, maintained and supported it, and given evidence that they will continue to do so, and it is apparent that it is for the child's benefit to remain with them. (Page 198.)

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; reversed.

*Feazel & Bishop,* for appellant.

The welfare of the child is of paramount importance. The courts are not bound to deliver the custody of the child into the hands of any particular claimant, but will exercise a sound discretion, and leave the child in such custody as may appear best for it. Hurd on Hab. Corp. 528; Tyler on Infancy and Coverture, § 187 and cases cited; 37 Ark. 31; 50 Ark. 351; 32 Ark. 92.

*W. D. Lee,* for appellee.

BATTLE, J. This is a contest between a father and grandfather for the custody of a boy, about ten years old, named Richmond Sypert.

Henry Sypert married Caroline Coulter, the daughter of

Joe Coulter. The issue of this marriage was Richmond Sypert. Caroline, being in bad health and her husband failing or refusing to secure for her needed medical attention, returned to her parents in the fall of one year, and lingered there until the spring of the next year, and died. He did nothing for her in her last illness, and visited her only once. Richmond, his son, at this time was about one year old. His father permitted him to remain with his grandparents until he was ten or eleven years old, when this proceeding was instituted to gain his custody. During all this time he contributed nothing to the support of his son. He visited him about twice. The grandparents cared for, clothed and fed the boy, and sent him to school. After he was four years old, the father says he asked the grandfather for him, and repeated this request several times thereafter. But no earnest effort was made to recover his custody until he had reached the age of ten or eleven years, and was old enough to be of some service. While he manifested such utter indifference to his child, the grandparents were much attached to him, and treated him with the care and consideration due from parents to children, and in their devotion to him are unwilling to give him up.

In the ten years that have expired since his wife's death Henry Sypert accomplished the following: He married again; in the first year of the second marriage he separated from his wife and remained apart for about one year and a half; had three children by the last marriage; indulged sometimes, though not frequently, in shooting craps, for which he was indicted three times; and accumulated one cow and seven hogs and household furniture, worth, he says, about fifty dollars. His second wife owned an interest in about forty acres of land, of which eighteen acres were cleared. Henry purchased an interest in it, but never paid a cent of the purchase money. At the commencement of this proceeding he was earning twenty dollars a month; and he and his wife own one horse, two cows and a calf and about seven hogs and household furniture. Joe Coulter owns one hundred and seventeen acres of land, upon which is a farm of 80 acres in cultivation; he has two mules, one pony mare, ten hogs, six cattle, and farming implements; and he is a carpenter, and has no young children. He paid $800 for his land, and does not owe a cent for it.

The chancellor who tried this case awarded the custody of the child to Henry Sypert, and Joe Coulter appealed.

The father has no proprietary right or interest in or to the custody of his infant child. As said by Senator Paige in *Mercein v. People,* 25 Wend. 64, 103, decided in the Court of Errors of New York in 1840: "There is no parental authority independent of the supreme power of the State, but the former is derived altogether from the latter. * * * The moment a child is born, it owes allegiance to the government of the country of its birth, and is entitled to the protection of that government. And such government is obligated, by its duty of protection, to consult the welfare, comfort and interests of such child in regulating its custody during the period of its minority." In the case of U. S. v. *Green,* 3 Mason, 482, which arose upon an application by habeas corpus of a father for his infant daughter, aged about ten years, alleged to be detained in the custody of her maternal grandfather, Judge Story said: "As to the question of the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of its natural protector, both for maintenance and education. When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and, if the infant be of sufficient discretion, it will also consult its personal wishes. It will free it from all undue restraint, and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare. It is an entire mistake to suppose that the court is, at all events, bound to deliver over the infant to his father, or that the latter has an absolute, vested right in the custody."

*In the Matter of Waldron,* 13 Johns. 418, is something like this case. In that case a habeas corpus was issued to Andrew McGowan to bring up the body of Margaret Eliza Waldron, an infant, alleged to be detained in his custody. John P. Waldron had married the daughter of Andrew McGowan, and, becoming embarrassed and insolvent, McGowan took his daughter to his house. She lived with him until her death; and during her resi-

dence with her father Margaret Eliza Waldron was born, who was always supported by her grandfather. Waldron used to visit his wife shortly after her removal to her father's, but had discontinued his visits for a long time previous to her death, and had not visited his child. McGowan was a man of very affluent circumstances, and abundantly able to educate and maintain his granddaughter; and it appeared that Waldron was insolvent, and unable to pay certain trifling debts which he had contracted, although it was alleged that his mother, with whom he lived, was competent and willing to support him and his daughter. It also. appeared that the infant's mother was the only daughter of McGowan, and the infant the only remaining grandchild in the family. It appearing that it would be more for the benefit of the infant to remain with its ·grandfather than to be put under the care of the father, the court refused to direct it to be delivered to the father.

In *McShan* v. *McShan*, 56 Miss. 413, the court held: "While, as a matter of abstract law, the father. as head of the family bound to provide therefor, is entitled to the custody of his children, yet such right is modified by the circumstances of each case; and where the mother, whom her husband has deserted without means among strangers, has found with her father a pleasant and permanent home, where her two infant girls are excellently cared for, her husband can not, repenting of having broken up the family, by habeas corpus take the little girls, although the mother refuses his proposals to again cohabit, and declares that the separation shall be perpetual. While the children, if of age of discretion, could be consulted, yet when very young the court must be guided by their best interests, in view of all the circumstances."

Mr, Hochheimer, in his work on the "Custody of ·Infants," says: "The following statement very nearly expresses the general result of authorities: 'The courts are, in no case, bound to deliver a child into custody of the claimant or any other person, but will investigate all the circumstances, and act according to sound discretion in the exercise of a conscientious parental duty. as the welfare of the child at the time appears to require, without regard to any technical right of custody, when such custody is not proper and beneficial, and without regard to mere technicalities of procedure.' " Page 96, and cases cited.

In *Verser* v. *Flood,* 37 Ark. 30, this court said: "As between the father, too, and the mother, or any other relation of the infant, where sympathies on either side of the tenderest nature may be relied on with confidence, the father is generally to be preferred. In the great majority of cases, his greater ability and knowledge of the world renders him the fittest protector, although that is not the test. The preference is conceded to the ties of duty and affection, and attends the primary obligation of the father to maintain, educate and promote the happiness of the child, according to his own best judgment and the means within his power. * * * Nevertheless, keeping these leading principles always in view, there are exceptional cases, depending on their own circumstances, in which the sovereign power of the State as *parens patriae,* acting through the chancellor, has interfered so far as may be necessary to afford the child reasonable protection. It is impossible to define them, further than to say that they should be of such urgency as to overcome all considerations based upon the natural affections and moral obligations of the father; and it may be added that this delicate discretion will be more freely exercised in behalf of one whose ties of affection are next to those of the father himself, upon whom the accompanying moral obligations would devolve in case of the father's death.

"In this case the motherless infant, two days old, was taken by the maternal grandmother, with the father's assent, and tenderly guarded through all the perils of infancy. There has been all of a mother's care, and scarcely less than a mother's affection. The child is yet scarcely three years of age, delicate in health; she is in a safe asylum, surrounded by those who may be trusted to guard her anxiously against pernicious influences, and to do their best to instill into her mind such principles as will promote her future usefulness and happiness. They, too, plead the full strength of natural affections. * * * * The father has shown himself to be a moral man, with the means of discharging his parental obligations. Certainly, under the circumstances, if he had been in possession of the child, no chancellor could have found warrant in equity for taking her away to be placed under the grandmother's care. But it can not be ignored that the case does not present that attitude. The child was placed where she is by the father's assent. By his assent ties have been woven between

the grandmother and granddaughter which he is under strong obligations to respect, and which he ought not wantonly and suddenly to tear asunder. He has shown no urgent necessity for present action, and his appeal to the circuit court for aid was not such as to enlist in most hearts any very strong sympathy."

The case before us is one of the exceptional cases. On the part of Henry Sypert, the ties of duty and affection for the son, to which preference is as a rule conceded to the father, are lacking. He has not shown as much concern and attachment for his son Richmond as some brutes manifest for their young. For ten years he has manifested an utter indifference for his son and contributed nothing to his maintenance and support. He has shown no evidence of a disposition or ability to discharge the duties of a father to the son. No ties of affection of the father for the son exist to be torn asunder. But ties have been woven between grandparents and grandson. They have taken care of, maintained and supported him nearly all of his life, and they give evidence that they will continue, if permitted, to care for, maintain and support him as their own child. No doubt can be entertained that it will be more for the benefit of the son to remain with his grandparents than to be put under the care and custody of his father.

The decree of the chancery court is reversed; and it is ordered that Richmond Sypert remain in the custody of Joe Coulter until the further order of a court of competent jurisdiction, with leave to the father, on all suitable occasions, to see him.