KIRK *v.* JONES.

Opinion delivered December 10, 1928.

586

*Culbert L. Pearce,* for appellant.

*L. A. Hardin,* for appellee.

HART, C. J., (after stating the facts). Minors are the wards of chancery courts, and it is the duty of such courts to make any orders that would properly safeguard their rights. This is a habeas corpus proceeding, and the court had the authority to grant the custody of the child to the aunt, provided it finds that the father had forfeited his rights thereto. Three parties are interested in the custody of minor children, the State, the parents, and the child itself. While the right of the father to the custody of his child is paramount, this is denied in many cases, and, regard being had for the welfare of the child, its custody has been placed elsewhere. *Verser* v. *Ford,* 37 Ark. 30; *Washaw* v. *Gimble,* 50 Ark. 351, 7 S. W. 389; *Coulter* v. *Sypert,* 78 Ark. 193, 95 S. W. 457; and *Clark* v. *White,* 102 Ark. 93, 143 S. W. 587; Ann. Cas. 1914A, 739. Other cases from this court and from many other courts of last resort to the same effect will be found cited in a case-note to Ann. Cas. 1914A, p. 748.

The permanent wellbeing of the child more than its present enjoyment is to be considered as of prime importance. No hard and fast rule can be laid down on the subject, and each case must be governed to a large extent by its own particular facts.

Tested by this rule, we think that the facts bring the case within an exception to the general rule, and that it would be best for the permanent welfare of the child that it should be in the custody of the sister of the father. In reaching this conclusion we are not unmindful that the father is married again and that his present home is a fit and suitable place for the child. Undoubtedly, however, this is true at the home of his sister.

She kept the child for two years after the death of its mother, without any hope or expectation of reward. She loved and cared for it just as she did for her own children, and never asked its father to make any contribution to its support. It is true that he testified that he contributed more to its support than he received from the United States Government for the support of the child, but his testimony is not corroborated by the other testimony. He admitted that he could not make any statement of the expenses which he had incurred. The record of the Veterans' Bureau shows that, from the date of the death of the mother of the child, he was allowed and received $20 per month for the support of the child. His sister testified that he never contributed anything to the support of the child except about $12 in money and a few cheap suits of clothes, worth a dollar each. He testified that he visited the child every two weeks, and, if he did so, he must have known that his sister paid the expenses of the operation upon the child. He never offered to pay her back any of this money until after the present suit was instituted. The amount of money he received from the government was based upon the theory that he had the care and custody of the child. During all the time he was collecting this money, the child was in the care and custody of the sister, and he never contributed any substantial sum towards its support. He never lived with his first wife after the birth of the child, and never gave any material contribution to her support and the support of the child. As far as the record discloses, the only sum contributed by him was the apportionment allowed by the United States Government when the wife is living separate and apart from her husband and has the custody of their minor child. Thus it will be seen that this apportionment, made for the benefit of the wife and child, was kept by the father after the death of the mother, on the theory that he had regained the care and custody of the child. The probabilities are that, if he ceased to receive any compensation from the United States, he would cease to

588

provide for the child, and that he might leave it to others to take care of his child just as he did when it came into the world.

On the other hand, the sister has shown her interest in the welfare of the child and has demonstrated that she would care for it just as she would for her own, regardless of whether or not she received the compensation apportioned for it by the government.

Therefore the decree will be reversed, and the cause remanded with directions to the chancery court to award the custody of the child to Mrs. Laura Kirk, with a right of the father to visit it at all proper times. It is so ordered.