[No. 35225. Department Two. June 23, 1960.]

MARY LOUISE CHANDLER, *Respondent*, v. EDGAR J. CHANDLER, *Appellant*.[1]

*Read & Church*, for appellant.

[1] Reported in 353 P. (2d) 417.

FOSTER, J.—This is an appeal by the husband from a judgment granting respondent wife's petition for a writ of *habeas corpus* and custody of the parties' two minor children.

During most of the ten years of their marriage and at the time of their separation, the matrimonial domicile was in Arkansas. Appellant husband alleges that respondent wife developed an emotional problem and deprived him of the opportunity to live with or to visit the children. As a result, in March, 1958, appellant filed a complaint in the Arkansas chancery court for Benton county praying that he be awarded custody of the children. While the matter was pending, on April 3, 1958, upon notice, the court temporarily ordered that appellant be allowed to visit the children at the home of respondent's mother, but restrained him from removing them from the grandmother's house. Later that same day, appellant took the children and moved to Clark county, Washington.

Thereafter, respondent answered and cross-complained for divorce. Personal service of the answer and cross-complaint then being impossible, substituted service was employed. It is beyond controversy that the matrimonial domicile was then in Arkansas. Respondent abandoned her prayer for divorce, and in May, 1958, was granted separate maintenance and custody of the two minor children.

In March, 1959, respondent wife sought the custody of the children in the superior court of the state of Washington for Clark county by *habeas corpus*. The court, in a memorandum opinion, held for respondent. Findings of fact, conclusions of law and judgment followed, from which the husband appeals. Thereafter, respondent wife returned with the children to Arkansas and filed no brief on this appeal.

Appellant assigns error to the trial court's determination that the Arkansas chancery court had jurisdiction over the children's custody and that its orders and decrees were valid. He assigns error to the refusal to hear proof of the claimed Washington domicile of the children.

Appellant argues that the Arkansas chancery court lacks

jurisdiction of an independent custody action not ancillary to divorce or separate maintenance, that the Arkansas custody proceeding was void *ab initio*, and that his personal submission to the court's jurisdiction was, therefore, nullified.

He further urges lack of jurisdiction over his person or that of the children in the wife's suit because, in that proceeding, he was not served with process in the state and the children were not present within the state at the time of the cross-complaint or at the time of the entry of the custody order.

■ The Arkansas chancery courts have jurisdiction over the subject matter of an independent custody proceeding.

The Arkansas chancery courts have, by statute and constitution, broad equity jurisdiction. Arkansas constitution (1874), Art. VII, § 15; Ark. Ann. Stat. (1947 ed.), §§ 22-401, 22-404.

Appellant contends that, during the period from 1921 to 1949, the chancery court had jurisdiction over independent custody proceedings by statute. Ark. Ann. Stat. (1947 ed.), § 57-106. That act was repealed in 1949, however, by Acts of 1949, No. 140, § 235, and appellant claims that Ark. Ann. Stat. (1947 ed.), § 62-2004 is now applicable and confers jurisdiction of independent custody suits in the probate courts by reason of the language therein granting jurisdiction over "the persons and estates of minors." Appellant argues, from the legislative history (which is, first a legislative grant of independent custody jurisdiction to the chancery courts followed by specific repeal thereof), that the chancery courts now have no such jurisdiction.

Such argument fails. Ark. Ann. Stat. (1947 ed.), § 57-106, was not an enactment which conferred jurisdiction, but was a recognition of the chancery court's constitutional jurisdiction, and only established standards for the court's guidance. Furthermore, the purpose of § 57-106 was substantially re-enacted in the repealer. See Ark. Ann. Stat. (1959 supp.), § 57-646 (Acts of 1949, No. 140, § 233). The legislative committee's comment to the section is:

"The provisions of subsection a [of the new act] are substantially those found in Sections 6203 and 6205, Pope's Digest [§§ 57-104, 57-106], with some clarification in detail."

Likewise, § 62-2004 is not new, but is substantially a re-enactment of the previous statute (Ark. Ann. Stat. (1947 ed.), § 57-101), which recognized the jurisdiction of probate courts over the property of minors. During the effective life of § 57-101, the chancery court properly exercised jurisdiction in awarding the custody of minors.

Furthermore, the Arkansas chancery court is a constitutional court endowed with equity jurisdiction and powers which cannot be enlarged or diminished by statute. *Patterson v. McKay,* 199 Ark. 140, 134 S. W. (2d) 543.

The probate court is also a constitutional court. Amendment 24 of the Arkansas constitution grants to the probate court

". . . such exclusive original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound minds and their estates, as is now vested in courts of probate, or may be hereafter prescribed by law. . . ."

Only the constitution can increase or diminish the jurisdiction of the Arkansas chancery courts. Certainly amendment 24 does not do so. It confers jurisdiction in matters unrelated to child custody. *Watson v. Henderson,* 98 Ark. 63, 135 S. W. 461; *Hall v. Brewer,* 40 Ark. 433.[2] The phrase in the amendment under consideration (amendment 24) "or may be hereafter prescribed by law" cannot be said to authorize legislative curtailment of constitutionally granted jurisdiction to the chancery court. In any case, no statute has been discovered in which the legislature has attempted to restrict the jurisdiction of the chancery court.

*Watson v. Henderson, supra,* is quite significant because the supreme court of that state held:

---

[2] These cases were decided under the original constitutional provision relating to probate courts, Arkansas constitution, Art. VII, § 34, but, with regard to the matter with which the instant case deals, Art. VII, § 34, and amendment 24 are substantially alike.

". . . But it was not intended by the Constitution to take away from the chancery courts their ancient original jurisdiction over the persons and estates of minors, so far as such jurisdiction may be necessary for the protection of the infant or to protect his property from waste or spoliation through the carelessness, fraud, mistake, or imposition of his parents, guardians, or others. These are distinct grounds of equitable jurisdiction which have existed since the establishment of courts of chancery, and have been recognized in the jurisprudence of our English-speaking people for centuries. . . ."

That state's chancery courts possess such broad equity jurisdiction and powers. Historically, chancery courts have jurisdiction over the persons of infants, and those powers are not dependent upon statutory grant.

In *McCord v. Ochiltree,* 8 Blackford 15, cited in *State v. Grisby,* 38 Ark. 406, it was held that the necessity for the existence of a power for the protection of minors was obvious, and was implied from a general grant of chancery powers. In *State v. Grisby, supra,* the supreme court of Arkansas summarized the law as follows:

"The jurisdiction of the Court of Chancery extends to the care of the person of the infant . . .
"In England the prerogative of the crown as *parens patriae* is exercised by the Court of Chancery. In this country the State takes the place of the King, and protects infants through Chancery."

Arkansas is one of the few remaining states with separate courts exercising exclusive equity jurisdiction. Such courts have always possessed the power, in whatever manner the question arose, of protecting and controlling the property and custody of minors. That power is broad and plenary and is not derived from statute. While applied in divorce and separation cases, its exercise is not limited to those actions but is invoked whenever and in whatever way the welfare of a child is brought before a court exercising equity powers. Such inherent power is comprehended by the Latin term *"parens patriae."*

A vast array of cases were collected by the supreme court

of Iowa and the law summarized in *Helton v. Crawley*, 241 Iowa 296, 312, 41 N. W. (2d) 60:

"In the law dictionaries of Bouvier, Black and Ballentine, the term parens patriae is defined as the father or parent of his country; in England, the King; in America, the people; the government is thus spoken of in relation to its duty to protect and control minor children and guard their interests. In cases involving the custody of minor children, whether it be by divorce or separation proceeding, by habeas corpus, petition to the chancellor, or other equitable proceeding, the court, as a department of the state, in thus exercising its inherent power and jurisdiction in equity, is spoken of as acting in the capacity of parens patriae. . . ."

And recently, in 1957, in the Missouri case of *I—— v. B ——* (Mo. App.), 305 S. W. (2d) 713, 722, the prevailing view was stated with even greater specificity:

" . . . We are of the opinion that the action between father and mother in respect to custody of their minor children is not one born of the statute—rather the statute is declaratory of the law which already existed in the equity courts. From the earliest times infants were regarded as entitled to the special protection of the king as *parens patriae*. This protection was exercised by, and has descended through, the chancery courts. Such protective jurisdiction is 'broad, comprehensive, and plenary.' And this jurisdiction seizes and obtains once and when the child is brought before the court *for any purpose* and its welfare becomes involved. The child then becomes, in some measure, the ward of the court. . . ."

A very careful statement was made by the supreme court of Iowa in *Mollring v. Mollring*, 184 Iowa 464, 167 N. W. 524:

"If, then, all there was in the case was a suit for divorce and a dismissal of the petition, there was no power in the divorce court to make custodial orders. And *Davis v. Davis*, 75 N. Y. 221, amounts to a holding that, when all that is present is a dismissed petition for divorce, there is no power to award the custody of children, and such power is not conferred by a statute which empowers the court to make orders 'during the pendency of the cause or at its final hearing or afterward.' But though the function of the district court, while entertaining a divorce suit, is thus limited,

it does not follow that the *court* had no inherent power to deal with the custody of infants. The district court has the powers of the chancery courts. The chancery court has original jurisdiction over the custody of infants as *parens patriae.* See *Power v. Power,* 65 N. J. Eq. 93 (55 Atl. at 111, 114). And it was held in *Cowls v. Cowls,* 3 Gilman (Ill.) 435, that such statute as we have confers no new authority or jurisdiction upon the chancery court. Where the question is the right to the permanent custody of children, the chancellor may, by virtue of his inherent jurisdiction, as public guardian of infants, fix their status in habeas corpus proceeding. *Buckley v. Perrine,* 54 N. J. Eq. 285 (34 Atl. 1054). So, then, though the divorce court has no power to settle custody, if all there is is a dismissed petition for divorce, it is still true that the district court of Iowa has other functions than determining divorce suits, and, as a district court, has inherent power to fix the permanent custody of infants."[3]

There can be no doubt that the Arkansas chancery court has jurisdiction over an independent custody proceeding. The fact that the appellant was not personally served with a copy of respondent's cross-complaint for divorce is, therefore, of no moment. The appellant invoked the court's jurisdiction, and he, himself, asked it to make an order respecting the custody of the children. The court thus gained personal jurisdiction over them. Since the independent custody proceeding was not void, the personal jurisdiction was not nullified and was concurrent with the court's jurisdiction over the subject matter. The court, therefore, had power to make valid temporary orders and to award the custody of the children.

The appellant contends that such a custody decree

---

[3]See, also, *The Queen v. Gyngall,* 2 (1893) Q. B. 232; *Kirk v. Jones,* 178 Ark. 583, 12 S. W. (2d) 879; *Richards v. Taylor,* 202 Ark. 183, 150 S. W. (2d) 32; *Crenshaw v. Crenshaw,* 203 Ark. 1086, 160 S. W. (2d) 37; *Kimberling v. Rogers,* 223 Ark. 348, 265 S. W. (2d) 952; *In re Hudson,* 13 Wn. (2d) 673, 126 P. (2d) 765; *Weber v. Doust,* 84 Wash. 330, 146 Pac. 623; *Dovi v. Dovi,* 245 Wis. 50, 13 N. W. (2d) 585, 151 A. L. R. 1368; *Murphree v. Hanson,* 197 Ala. 246, 72 So. 437; *Duke v. Duke,* 109 Fla. 325, 147 So. 588; *In re Santillanes,* 47 N. M. 140, 138 P. (2d) 503; *Bartlett v. Bartlett,* 175 Ore. 215, 152 P. (2d) 402; 3 Story's Equity Jurisprudence (14th ed. (1918)) 370, § 1752; 4 Pomeroy's Equity Jurisprudence (5th ed. (1941)) 870, 871, §§ 1304, 1305; McClintock on Equity 437, § 162; 30 C. J. S. 390, § 51; 18 Ky. L. Jour. 207.

may be modified by a Washington court upon a factual showing respecting the children's welfare not disclosed to the Arkansas court, because under Arkansas law, a custody decree is final only as to the conditions existing at the time thereof and may be modified on a showing of changed circumstances or facts existing at the time of the decree, but unknown to the court. *Keneipp v. Phillips,* 210 Ark. 264, 196 S. W. (2d) 220; *Tucker v. Turner,* 195 Ark. 632, 113 S. W. (2d) 508; *Phelps v. Phelps,* 209 Ark. 44, 189 S. W. (2d) 617. The rule is correct (*Guy v. Guy,* 55 Wn. (2d) 571, 348 P. (2d) 657; *New York ex rel. Halvey v. Halvey,* 330 U. S. 610, 91 L. Ed. 1133, 67 S. Ct. 903), but is not applicable here.

Custody decrees of a sister state will not be changed here when the children are not domiciled in this state. Such is a prerequisite to the exercise of jurisdiction by Washington courts. *State ex rel. Marthens v. Superior Court,* 25 Wn. (2d) 125, 169 P. (2d) 626; *In re Mullins,* 26 Wn. (2d) 419, 174 P. (2d) 790; *Sherwood v. Sherwood,* 48 Wn. (2d) 128, 291 P. (2d) 674.

Appellant removed the children from Arkansas and brought them to Washington in defiance of what we have determined to be a valid order. *In re Mullins, supra,* held that a parent who removed a child from another state to Washington in disobedience of a court order cannot acquire a Washington domicile for the child. Consequently, the trial court correctly refused to hear further evidence with respect to domicile for the purpose of establishing jurisdiction to modify the custody decree.

The judgment is affirmed.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.