STATE EX REL. ROSENSTEIN *v.* HOOVER.

Opinion delivered April 4, 1921.

1.  PARENT AND CHILD—EFFECT OF SURRENDER OF CUSTODY OF CHILD.— While a parent may surrender the custody of his child to another so as to make the latter's custody legal, yet the gift is not irrevocable, and in all controversies subsequently arising the matter of controlling importance is the interest and welfare of the child.

2.  INFANTS—CUSTODY OF CHILD.—In deciding the question of awarding the custody of a child, the court seeks to promote its physical, mental and moral development.

3.  INFANTS—CUSTODY OF ORPHAN.—In a proceeding to determine the custody of an orphan girl eleven years old, it appeared that the father had given the custody of the child five years before to appellee, who was not related, but was attached, to the child, and was properly educating and caring for her; that the child was intelligent and capable of judging for herself.  *Held* that the child's custody will be left with appellee, rather than with an aunt living in another State, who had never done anything for the child, and had not even written to her.

4. INFANTS—CUSTODY OF ORPHAN CHILD.—In determining the right to the custody of an orphan child, the court will consult the child's inclination if it is of sufficiently mature age to judge for itself; and while the court will not listen to mere whims, it should consider the child's feelings, affections and probable contentment in the future.

Appeal from Jefferson Circuit Court; *W. B. Sorrells,* Judge; affirmed.

*W. B. Cowan,* for appellants.

The custody of the child is controlled by the best interest, present and future well-being, of the little girl. In *habeas corpus* cases the courts are not bound to deliver a child to the claimant or any other person, but will act in their sound discretion as the best interest of the child requires. 78 Ark. 193; 80 *Id.* 461; 89 *Id.* 501; 102 *Id.* 93; 82 *Id.* 461; 4 Hun 582; 16 Pickle 227; 22 *Id.* 549; 50 Miss. 413. In applying the rule, the court will treat the fact that the child wishes to remain where it is only as a circumstance of the case—not controlling. 78 Ark. 193; 50 Miss. 413. Evidence that the father gave the child to respondent is only a circumstance and not binding on any one. 102 Ark. 93; 104 *Id.* 206. The evidence shows that it is best for the well-being of the child that the custody be given to appellants. 97 S. W. 49; 37 Ark. 30. 82 Ark. 461, is peculiarly in point. As to the wishes of the child, see 78 Ark. 193; 50 Miss. 413. The wishes of the child are not controlling, but it is to the best interests of the child that it should be with her aunt and grandmother.

*Geo. D. Hester* and *E. W. Brockman,* for appellee.

1. The last domicile of the father, deceased, constitutes and remains the domicile of a minor child and can not be changed by the child's acts until it reaches majority. 16 Ark. 377; 72 *Id.* 299; 116 *Id.* 361. These cases are applicable, as Zula May's mother has been dead several years.

2. In *habeas corpus* cases for custody of a child, courts are not bound to deliver the child to any claimant

or other person, but after investigation of all the circumstances act as the welfare of the child requires; if the infant be of sufficient discretion, the court will consult its personal wishes. 50 Ark. 351; 78 *Id.* 193. The evidence shows that from past and present acts and circumstances it is best for the child to remain with appellee, and the finding of the chancellor should be affirmed.

HART, J.    This case comes before us on certiorari to review the judgment of the circuit judge of Lincoln County giving to Mrs. Sallie Hoover the custody and control of Zula May Palmertree, a girl eleven years old. The facts are as follows:

Zula May Palmertree was born in September, 1908, and her father, Thomas A. Palmertree, and her mother went to Memphis while she was an infant. The father and mother separated several times and finally the father moved to Arkansas. The mother kept the child until her death, about the 8th day of January; 1915. Soon after that the father had the child sent to him in Lincoln County, Arkansas. The child was then about six years of age. In a short time after the child was brought to Arkansas, the father gave her to a son of Mrs. Sallie Hoover where she remained about one month. The father then thought of placing the child in an orphan's home, but, at the instance of Mrs. Sallie Hoover, he gave the child to her when she was about six years old, and the child remained in her custody until her father's death about five years later.

Mrs. Sallie Hoover was a witness for herself. According to her testimony, the father of Zula May Palmertree gave her the child and told her that she could have the child as long as she lived. Mrs. Hoover is now fifty-nine years of age and resides with two unmarried sons and an unmarried daughter, on a farm. She does not own any land herself, but her two sons each have a farm comprising a hundred acres of good land. They have a good school in the neighborhood from six to nine months

during the year. Zula May has been sent to this school and is now ready for the fifth grade. She has worked in the fields some, but has attended school regularly. Mrs. Hoover has become very much attached to the child and loves her like one of her own children. The relatives of the child have never given her anything since she has been in the custody of Mrs. Hoover. Zula May's father left her an insurance policy of $1,500 and a very small amount of personal property when he died. He resided in Lincoln County near Mrs. Hoover all the time she had possession of Zula May. He drank and gambled some, but was regarded as a kind-hearted man and loved his daughter.

Several witnesses who lived in the neighborhood testified that Mrs. Hoover was an excellent woman and had cared for Zula May as if she was her own child. Two of these witnesses said that the father of Zula May had told them that he intended for Mrs. Hoover to have Zula May and did not intend that she should be raised by his sister in Memphis, who is one of the petitioners for the custody of the child in this case.

Zula May Palmertree was a witness in the case. According to her testimony, she is eleven years old and lives with Mrs. Sallie Hoover in Lincoln County, Arkansas. She has lived with Mrs. Hoover about five years. She thinks a great deal of Mrs. Hoover and is treated well by her. She remembers living with Mrs. Lela P. Rosenstein a little while. She did not live with her father after the death of her mother. Mrs. Hoover's sons treat her as if they were her own brothers, and Mrs. Hoover's daughter treats her like a sister. She would rather live with Mrs. Hoover than to go with Mrs. Rosenstein. Mrs. Hoover has never whipped her and has always treated her well. She attends church and Sunday school, which is about one mile away. Mrs. Hoover goes to Sunday school and is a member of the church. Her sons and daughter go to church.

Mrs. Lela P. Rosenstein was a witness for herself. According to her testimony, her brother, Thomas A.

Palmertree and his wife did not get along well together. They frequently separated, and she kept Zula May during the periods of their separation. After the father left Memphis, the mother continued to reside there and kept Zula May with her. Finally the mother was taken sick, and, realizing that she was about to die, gave Zula May to Mrs. Rosenstein. After Mrs. Palmertree died, the father sent for Zula May and had her brought to Arkansas. This was some five years before he died. Mrs. Rosenstein did not see Zula May any more after she sent her to Arkansas until she filed her petition in the present case after Zula May's father had died.

Mrs. Rosenstein was divorced from her first husband in the fall of 1914, and married her present husband soon thereafter. Her present husband is a merchant and worth about $35,000 and has a good income. He has a good residence and is well able and suited to have the care and custody of Zula May.

Other witnesses testified that Mr. and Mrs. Rosenstein had only one child; that they loved children and were well able to provide for Zula May. Mrs. Rosenstein's mother lived with her, and they both loved Zula May. Mr. Rosenstein promised to bring up Zula May at his own expense and save her insurance money and the accumulated interest for her. In this connection it may be also stated that Mrs. Hoover said that she did not want Zula May's money; that all she wanted was the child.

The authority of a parent over his child has been generally said to arise from the duty he is under to maintain, protect and educate it. Hence the weight of authority, and the adjudicated cases in this State sustain the doctrine that the right of a parent to the custody of a child can not be defeated by a mere parol gift of the child by the parent to another. While a parent can by agreement surrender the custody of the child so as to make the custody of him to whom he surrenders it legal, yet the gift is not irrevocable, and in all controversies subsequently arising the matter of primary and con-

trolling importance is the interest and welfare of the child. *Washaw* v. *Gimble,* 50 Ark. 351; *Coulter* v. *Sypert,* 78 Ark. 193; *Clark* v. *White,* 102 Ark. 93 and cases cited; *Mantooth* v. *Hopkins,* 106 Ark. 197 and case notes to 6 A. & E. Ann. Cas. at p. 939, and Ann. Cas. 1915 B, 1015 at 1019. Hence, in deciding the delicate question of awarding the custody of a child, the court seeks to promote its physical, mental and moral development.

In the instant case both parties have expressed a willingness to rear the child at their own expense and have declared their great love for the child. Mrs. Rosenstein is an aunt of the child and her husband is a well-to-do business man in the city of Memphis, Tennessee. They have only one child, and they expressed themselves as willing to rear Zula May at their own expense and to give her the amount of insurance left her by her father with the accumulated interest when she reaches full age. They have the reputation of being kind-hearted people and are well respected by their friends and acquaintances. They had not seen the child for five years before filing the petition for her custody in this case.

On the other hand, Mrs. Hoover, while poorer in this world's goods, lives with two unmarried sons, who have good farms and are taking care of her. It has been urged that they might marry and leave Mrs. Hoover to shift for herself. The family is shown, by the record, to be a very affectionate one, and there is nothing to indicate any separation of them. Zula May testified that Mrs. Hoover's children appear to love her as if she was their own sister. It might with equal propriety be said that the Rosensteins might grow tired of her and place her in an orphanage or other institution. They live beyond the jurisdiction of the court, and it would have no way of compelling them to care for her.

Another thing to be considered is that ties of affection have grown up between Mrs. Hoover and the child. The father saw fit to place her in the custody of Mrs. Hoover. While he was addicted to drink, the evidence shows that he was a kind-hearted man and loved his

daughter. He evidently thought that he was acting for her best interest in giving her to Mrs. Hoover. So far as the record discloses, Mrs. Rosenstein did not write to Zula May after she came to Arkansas or make any effort to induce the father to return the child to her, although, if she had made any inquiry, she could have ascertained that the father had given the child to Mrs. Hoover. The child testified that she wished to continue to live with Mrs. Hoover. She has been sent regularly to school and to church. Her testimony shows that she is intelligent and is capable of judging to some extent for herself. Courts will consult the inclination of an infant if it be of a sufficiently mature age to judge for itself. 2 Kent's Com. (14 ed.), p. 194. Of course the court should not listen to the mere whim of the child, but it should consider the child's feelings, its affections, and its probable contentment in the future. The record discloses that both parties love Zula May and would try to make her happy; and are capable of taking care of her.

When we consider, however, that her father was a resident of this State and chose to give her to Mrs. Hoover, coupled with the fact that Zula May has lived with Mrs. Hoover for five years, and that the warmest feelings of affection have sprung up between them and now exist, the court is of the opinion that the circuit judge did not err in awarding the custody of Zula May to Mrs. Hoover.

The judgment will therefore be affirmed.