KENEIPP *v.* PHILLIPS.

4-7932                                    196 S. W. 2d 220

Opinion delivered June 24, 1946.

Rehearing denied September 30, 1946.

Paul Shafer, Lee Seamster and Karl Greenhaw, for appellant.

G. T. Sullins and Rex W. Perkins, for appellee.

Holt, J.   The custody of James Ronald Keneipp, 7 years of age, the son of appellant, James V. Keneipp, and appellee, Leota G. Phillips, the former wife of James V. Keneipp, is involved here. Appellants, James V. Keneipp and Mrs. O. M. Dennison, are brother and sister.

September 7, 1944, appellee, Mrs. Phillips, then Mrs. Keneipp, secured a decree of divorce in Indiana from appellant, James V. Keneipp, and was awarded the custody of Ronnie, the little boy here involved. Thereafter, on September 15, 1944, Mrs. Keneipp went to Fayetteville, Arkansas, and married her present husband, A. R. Phillips, and has since resided with her husband in Fayetteville. In August, 1945, appellee brought her son to Fayetteville where he has since continued to reside with her and his stepfather.

Thereafter, on September 11, 1945, appellant, father of Ronnie, applied in the Indiana court that had rendered the divorce decree on September 7, 1944, for a modification of that decree as to the custody of Ronnie, and on September 26, 1945, an order was entered by the Indiana court modifying its former decree as to custody and awarded the custody of Ronnie to his aunt, appellant, Mrs. O. M. Dennison, as requested by the father. In this suit for modification there was no personal service on appellee in Indiana.

As has been indicated, appellee and her son, Ronnie, were living in Fayetteville, Arkansas, and residents of Arkansas, at the time the application, supra, for modification was made, and at the time it was granted, by the Indiana court.

November 14, 1945, appellants, father and aunt of Ronnie, as plaintiffs, filed the present suit in Washington Chancery Court in which they sought to have the custody of the child awarded to Mrs. Dennison, the aunt. Upon a hearing, the court denied appellants' prayer for custody of the child and found that the mother, appellee, "is the proper and suitable person to have the care, custody and control of said child; that the complaint of the plaintiffs (appellants) is without equity and should be dismissed."

From the decree comes this appeal.

Appellants say that the trial court erred in awarding the child's custody to appellee ".(1) In failing to give full faith and credit to the modified decree of the Superior Court of Vigo county, Indiana, there being no allegation or proof of changed circumstances or conditions arising since September 26, 1945, the date of the modified decree to warrant a change in custody of said child. That said modified decree was *res judicata*, . . . (2) That the preponderance of the evidence showed that the present and future welfare and interest of said minor child would be best served by awarding his custody to appellant, Mrs. O. M. Dennison, instead of the child's mother, the appellee herein."

(1) In answering appellants' first contention, it becomes necessary to determine the extraterritorial effect of the divorce decree of the Indiana court in favor of appellee on September 7, 1944, in which she was awarded the custody of the child, and the effect that an Arkansas court should give to the modified decree of September 26, 1945, in which the appellant, Mrs. Dennison, the aunt, was awarded its custody. The rule is well established here and elsewhere that a foreign decree, such as the September 7th decree of the Indiana court, *supra,* in a child custody proceeding is *res judicata* as to all matters and issues at the time of its rendition, but not as to facts and changed conditions affecting the child's welfare that may arise subsequent thereto.

In *Tucker* v. *Turner,* 195 Ark. 632, 113 S. W. 2d 508, this court, quoting with approval from 15 R. C. L., p. 940,

§ 417, said: "A judgment of a court of one state awarding the custody of minor children in a divorce proceeding is not *res judicata* in a proceeding before a court of another state, except as to facts and conditions before the court upon the rendition of the foreign decree. As to facts and conditions arising subsequently thereto, it has no controlling force, and the courts of other states are not bound thereby."

As to the effect to be given the modified decree, *supra,* procured by appellant, husband, while his son and former wife were residents of Fayetteville, Arkansas, the general rule, as well as that declared here by this court, is that it has no extraterritorial effect beyond the boundaries of Indiana where it was rendered, and that when the domicile of a child is changed and it becomes a citizen of another state, as in the present case, such child is no longer subject to the control of the courts of the first state. In the *Tucker* v. *Turner* case, *supra,* this court announced the rule, continuing the quotation from § 417 Ruling Case Law, *supra:* "Nor is a decree of a court of one state awarding the custody of a child binding upon the courts of another state under the full faith and credit clause of the federal constitution after the child had become domiciled in the latter state. Such a decree as to a child has no extraterritorial effect beyond the boundaries of the state where it is rendered, and the courts of the second state will not remand the child to the jurisdiction of another state, especially where it is against the true interest of the child. The reason for this rule is found in the fact that children are the wards of the court and the right of the state rises superior to that of the parents. Therefore, when a child changes his domicile and becomes a citizen of a second state, he is no longer subject to the control of the courts of the first state."

(2) We proceed, therefore, to consider whether, on the record presented, there have been such changed circumstances and conditions since the Indiana decree of September 7, 1944, to warrant change of custody from the appellee, mother, to appellant, Mrs. Dennison, the child's aunt.

268

At the outset, it may be observed that the appellant, father, has never sought, and does not now seek, the custody of his child. This is a contest between the real mother and the child's aunt.

In custody cases such as is presented here, of primary consideration is the well being and best interest of the child involved. "The infant child is a silent party to this litigation and her interests and rights cannot be ignored. Infant children are regarded as the wards of the courts, and the good of the children is always the chief thing to be considered by the judge in determining their care and custody." *Tucker* v. *Turner, supra.*

"As between the parent and grandparent, or anyone else, the law prefers the former unless the parent is incompetent or unfit, because of his or her poverty or depravity, to provide the physical comforts and moral training essential to the life and well-being of the child." *Baker* v. *Durham,* 95 Ark. 355, 129 S. W. 789. See, also, *Miller* v. *Miller,* 208 Ark. 1058, 189 S. W. 2d 371.

"A decree fixing the custody of a child is, however, final on the conditions then existing, and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child. See, also, *Phelps* v. *Phelps,* 209 Ark. 44, 189 S. W. 2d 617. The party seeking a modification of a divorce decree awarding custody of a minor child assumes the burden of showing such a change in conditions as to justify such modification. *Kirby* v. *Kirby,* 189 Ark. 917, 75 S. W. 2d 817, and *Seigfreid* v. *Seigfreid,* (Mo. App.), 187 S. W. 2d 768." *Blake* v. *Smith,* 209 Ark. 304. 190 S. W. 2d 455.

On a trial here *de novo,* the rule is that unless we can say from all the evidence presented that the findings of the trial court are against the preponderance thereof, we must affirm.

The evidence discloses that following the birth of this child in 1938, the father did not furnish support for the

mother and child and that it became necessary for her to seek work, which she proceeded to do, until she secured a divorce from her husband and the custody of her son September 7, 1944. In that decree, the Indiana court found that the plaintiff (appellee) "is a fit and proper person to have the care and custody of the minor child, James Ronald, age six years." Since that decree, both of Ronnie's parents have remarried.

Appellant, Mrs. Dennison, the child's aunt, lives with her husband, a man 56 years of age, on a farm in Illinois, just over the Indiana line, and with the child's grandmother, 80 years of age, who is very feeble. The farm house contains only three rooms. Mrs. Dennison and her husband are tenants and have no substantial property of their own. Mrs. Dennison's husband has a serious heart affliction and can do very little work. She works about five days a week and is away from home while at work. The appellee, mother, and the father of the child left it in the home of Mrs. Dennison and her husband for more than three years prior to the divorce decree of September 7, 1944, and they have become very much attached to it. The child received good care and attention and was sent to school and church. Mrs. Dennison testified that appellee, the mother, never promised or agreed to give the child to her, that in fact "we did not talk it over." During the time Ronnie was with his aunt, the mother made frequent visits to him, took him with her at various times for short intervals and helped in his support.

Since appellee's second marriage in Arkansas, she, Ronald and her husband live in a rented home. They own two restaurants, one in Fayetteville and the other in Prairie Grove. The husband owns a farm of 132 acres near Fayetteville, has leased an adjoining tract of 211 acres and deals extensively in livestock. They send the child to school regularly where he is making good progress. Appellee has not as yet started him to Sunday school and church for the reason,—so she says,—that her doctor advised that she keep the boy in the open air and sunshine as much as possible, and that she, her husband and the boy spend their Sundays on their farm where the

little boy can ride a pony and play with other children. The child's stepfather seems devoted to him and says he wants his custody, is willing to educate him, that he had taken out a policy of insurance for the boy before he had seen him.

Of some significance is the testimony of appellant, Keneipp, the child's father, bearing upon the wishes of this little boy. "A. Then I asked him if he wanted to go home with me; he hesitated and said, 'Well, I would like to go to school here, and come up there in the summer time.' I said, 'I do not think you could do that; you will have to be here all the time or up there all the time.' Q. So he said he would like to stay here in school? A. He did say that. Q. You do not want the baby boy? A. I want my sister to have him."

There is evidence that beer is being sold at the two cafes and that disturbances have occurred in the Fayetteville cafe, and that the child frequently eats there. Appellee testified that the family had practically all their breakfasts and evening meals at home. There was also testimony that appellee and her husband intended to discontinue the sale of beer when their present supply was exhausted.

We think it unnecessary to set out the testimony more in detail. It suffices to say that after carefully reviewing it all, we have reached the conclusion that the findings of the court below are not against the preponderance of the evidence. We fail to find evidence of such changed conditions and circumstances since the Indiana decree, *supra*, of September 7, 1944, as would warrant a change in the custody of this little boy from its real mother to its aunt.

Accordingly, the decree is affirmed.