CODER *v.* CODER.

5-979                                    290 S. W. 2d 628

Opinion delivered May 28, 1956.

*Sam Goodkin,* for appellant.

*Hardin, Barton, Hardin & Garner,* for appellee.

PAUL WARD, Associate Justice. This is a child custody case, and, as usually happens in such cases, both cold facts and warm emotions are involved.

The litigation which led to this appeal began on September 6, 1955 when appellant, Nadine Coder, filed for a Writ of Habeas Corpus in chancery court to obtain possession of her 12 year old son, Frank Ray Coder. The writ was directed against Robert E. Coder, the father,

and his father and mother, Frank D. and Lola Coder, who at that time had actual custody of the child.

The factual background leading up to this litigation is, briefly, as follows: Nadine Coder and Robert E. Coder were married August 31, 1941 and Frank Ray was born some two years later; The parties were divorced in February of 1945, and remarried in February of 1946; They were again divorced in the latter part of 1949, the result of a suit filed by Robert E. Coder in Sebastian County Arkansas charging his wife with desertion; On December 17, 1951, while Nadine Coder was living with her son in St. Louis, Missouri, the Missouri court gave her the custody of her son; Shortly thereafter Nadine Coder, with her son, moved to the home of her parents in Neosho, Missouri where she was employed; In January 1953 Robert E. Coder, under circumstances to be discussed later, went to Neosho and got his son, and brought him to Fort Smith where he has lived with his father and his paternal grandparents until this time, and; In August 1953 appellant moved to California where she is employed, living in a rented home with no other adult.

After hearing all the testimony, the trial court denied appellant's petition for a Writ of Habeas Corpus and gave the custody of Frank Ray Coder to his father, Robert E. Coder, one of the appellees herein. The trial court further ordered that appellant, the mother, was entitled to have her son, Frank Ray. Coder, spend his vacations [between school terms] with her in California, provided she furnish a $1,000 bond conditioned upon the return of the child to his father, provided she must return the child to his father at any time the child desires, and provided she pay the round trip fare each way. It was further ordered that the father should pay appellant the sum of $30 per month during the time she had the boy in her custody.

For a reversal, appellant makes the following contentions: (a) The trial court failed to give full faith and credit to the decree of the Missouri court; (b) Appellees failed to file an answer or any other affirmative de-

fense; (c) Appellees failed to show changed conditions since the Missouri decree, and; (d) The trial court imposed improper visitation conditions. We reach the conclusion that only the last of these contentions can be sustained.

(a and c). These contentions are so related that they may be discussed together. Appellant appears to be under the impression, and we think erroneously so, that the trial court based its decision on incidents and conditions that occurred and existed prior to the Missouri decree awarding custody of the child to her. It is true that some matters occurring prior to the said decree were brought out in the testimony, but the court explained that it could not intelligently compare present conditions with those existing prior to the Missouri decree without knowing something about the prior conditions. We gather from the trial court's decree that it was based on a change of conditions since the Missouri decree and not on conditions that existed prior thereto. The law in this respect is well settled. We have repeatedly held that a decree of another state fixing the custody of a child is final on conditions then existing, and should not be changed thereafter by a decree of a court of this state unless on conditions altered since the decree of the other state, or on material facts existing at the time of the decree of the other state but unknown to that court, and then only for the welfare of the child. See *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S. W. 450; *Keneipp* v. *Phillips,* 210 Ark. 264, 196 S. W. 2d 220; *Turner* v. *Dodge, Chancellor,* 212 Ark. 991, 208 S. W. 2d 467, and; *Henkell* v. *Henkell,* 224 Ark. 366, 273 S. W. 2d 402. All of these cases, and many others, also hold that the welfare of the child must be considered.

After a careful consideration of all of the testimony we are persuaded that the weight of the evidence sustains the chancellor's findings that the change in conditions and circumstances since the Missouri decree, and the welfare of the child at the present time, justified awarding the custody of the boy to his father. Such holding is confirmed by the knowledge that the trial

judge observed the witnesses and their demeanor and was, therefore, in a better position than we to evaluate their testimony.

With one or two exceptions, later noted, the evidence is not in dispute.

Since 1953, when appellant left her parents in Neosho and moved to California, she has lived in a rented house with no one who could look after her son while she is absent at work. We are convinced that appellant has great love for her son and that she would do all in her power to look after him properly, and he would have access to excellent schools and churches, but she herself admits that during the interval when her son would be out of school in the afternoons and before she returned from work in the evenings he would be left to the care and protection of her neighbors. Also, it is the contention of appellees that appellant, in January 1953, voluntarily surrendered the permanent custody of her son to his father. Although this contention is denied by appellant, we think the weight of the conflicting testimony sustains it. Mrs. Lola Coder, the paternal grandmother of the boy, testified that appellant, in January 1953, telephoned her that she was having some trouble with the boy, that he didn't get along with his maternal grandmother, that she herself had to work, and that she didn't know what she was going to do. Mrs. Lola Coder further testified that she told appellant she would help her out and that she would be glad to keep the boy in her home. Following this the boy's father went to Neosho, Missouri and brought him back to Fort Smith, bringing all of his clothes. It is admitted by appellant that she agreed for the father to take the boy on this occasion but she denies that she agreed to turn over to appellees the permanent custody. Her statement is that she intended for the boy to make only a temporary visit with his father. Appellant further states that she had been trying all along to get the boy back but she fails to detail any means or attempts calculated to do so. The fact remains that she took no legal steps to regain custody of her son until she instigated this litigation on September 6, 1955. Under these circumstances we think the

chancellor was justified in finding that her actions were not compatible with her avowed intention to merely let her son make a temporary visit to Fort Smith. The undisputed testimony discloses that during the two and one-half years which the boy has lived with appellees in Fort Smith, he has been given proper care and treatment, he has been afforded excellent school and religious training, he has acquired wholesome friends and associates, and he is happy and contented in his present home. It is appellant's belief that the appellees have attempted to alienate her son's affections for her, but they and he deny this, and the boy says he still loves his mother but had rather live with his father. We agree with the chancellor that it is for the best interest of Frank Ray, who is now 12 years old, to remain with his father in the present surroundings. It is true that the father has employment which permits him to be at home only once or twice every two or three weeks, but at all times the boy is in the home and under the care and protection of his paternal grandparents.

(b) We do not agree with appellant that it was reversible error for the trial court to refuse to require appellees to file an answer to her petition or, in lieu thereof, grant her petition. The petition for the writ was filed on September 6, 1955 and the hearing was held two days later. At the hearing, the first witness was introduced by the petitioner and from this witness there was elicited certain information regarding the religious and educational environments which would surround the boy if he was permitted to go to California. Appellant testified next, and it was during her testimony that her attorney stated in effect that he was willing to develop matters subsequent to the Missouri decree, although at the same time he objected to the court hearing testimony as to conditions and matters previous to said decree. The trial court overruled appellant's objections on this point but explained its reasons as heretofore mentioned. Shortly thereafter appellant's attorney reminded the court again that he did not know what appellees' defense would be. Thereupon appellees' attorney, at the suggestion of the court, outlined appellees' defense.

There was no further insistence by appellant that any written pleading be filed by appellees and no further objections were made to the introduction of testimony on that ground. Under these circumstances appellant waived the filing of a formal answer by appellees and cannot at this time be heard to complain.

(d) We feel that the visitation conditions imposed by the court on appellant were too harsh, and that they might amount to a complete denial thereof. Appellant strongly insists that she is not able, under the circumstances existing, to make a $1,000 bond for the safe return of her son to Fort Smith if and when he visits her in California, and there is no evidence to the contrary. We think a bond in the amount of $500 should be sufficient, especially in view of the fact that the boy should within two years or less be capable of making his own decision as to where he wants to live. The trial court required appellant to pay all travel expenses for the boy from Fort Smith to California and return. It is usual in such instances, and we think it is appropriate in this case, for appellant to pay the travel expenses from Fort Smith to California and for the boy's father to pay his travel expenses from California to Fort Smith. We note also the court provided that when and if the boy should visit his mother during vacation time she should return him "to the home of his father at any time he desires." This restriction, it seems to us, is not only useless but it would be difficult to enforce, and it also might lead to a denial of visitation rights entirely. If and when the boy visits his mother during vacation time she should not in any way be hampered in her efforts to strengthen her son's ties of love and loyalty.

Therefore the decree of the trial court is modified as above set forth and, as so modified, is affirmed, and the trial court is directed to enter a decree in conformity with the views above expressed.

Justices MINOR W. MILLWEE and GEORGE ROSE SMITH dissent.