THOMAS *v.* BARNETT.

5-1682                                                   318 S. W. 2d 154

Opinion delivered November 24, 1958.

[Rehearing denied December 22, 1958]

*Ike Murry,* for appellant.

*W. J. Hulsey,* McAlester, Okla., for appellee.

J. SEABORN HOLT, Associate Justice. Appellant, Carl Thomas, and appellee, Viola Barnett, are the parents of Sharon Sue Thomas, a little five year old girl.

They were divorced in Oklahoma and the District Court
of Pittsburg County Oklahoma gave the father (appel-
lant) exclusive care and custody of Sharon Sue. On an
appeal by the mother to the Supreme Court of Okla-
homa (*Alford* v. *Thomas,* 316 P. 2d 185), the child's
custody was, on October 1, 1957, given to her "until
after a conclusive showing and judicial determination
have been made as to her unfitness and that by reason
thereof the best interest of the child required that she
be placed in the custody of someone else." Thereafter,
on November 12, 1957, upon another hearing before the
Pittsburg County District Court, appellant (father)
again asked for the child's exclusive custody and his
prayer was granted. The judgment contained these re-
citals. "Wherefore, witnesses are sworn and examined
in open court, they being Captain Bob Oliver, Lt. El-
mer Durant and Jess Henson of McAlester Police De-
partment; Jack E. Dale, Court Clerk of Pittsburg Coun-
ty, Oklahoma; Mrs. Vada Lawson; Hon. Jay P. Farns-
worth, Municipal Judge of McAlester, Oklahoma; Fran-
ces M. Powell, Director of Public Welfare in Pittsburg
County, Oklahoma; Mrs. Oleta Mitchell, M. K. Barnett
and the plaintiff. And the cause having been concluded
and the court being sufficiently advised, finds that the
defendant is the mother of three children, to-wit, War-
ren Johnston, age 12 years, Linda Kay Barnett, age 10
years and Sharon Sue Thomas, age 4 years, each being
by a separate father; that said defendant has been, dur-
ing the period of time starting August 25, 1945, and
ending April 11, 1957, involved in nine divorce actions
filed in this court; that defendant, for a period of time
starting at the latest in the year 1950, has been an un-
fit person to have the care, rearing and custody of minor
children; that she has received fraudulent funds from
the Department of Public Welfare in the amount of
$2,248.00 which she has not repaid; that defendant has
abandoned her children to the care and custody of oth-
ers; she stands at this time convicted of contempt of
this court for disobeying the order of the resident judge,
W. A. Lackey; that she bears a bad reputation for

morality and she is personally addicted to bad language, to lewd association with various men; that she is a person of violence and one who uses vile and opprobrious language in public. The court finds that said defendant, between February 8, 1955, and March 31, 1957, has been convicted of three separate criminal offenses in municipal court in the City of McAlester, Oklahoma; that she now has custody of the minor child, Sharon Sue Thomas.

"The court further finds that under date of October 18, 1957, the two older children of defendant were adjudged dependent and neglected children based upon jury verdict now final in the County Court of Pittsburg County, Oklahoma, and that under the order of said County Court, defendant has been deprived of the care and custody of her two older children, Warren Johnston and Linda Kay Barnett. The court finds, upon evidence submitted herein, and upon evidence submitted on March 26, 1957, that defendant is an unfit person to have the custody or right of visitation of said minor child, Sharon Sue Thomas, and that it is not for the best interest of said child to be in the custody of defendant; that by reason of the emotional instability and bad habits and temperament of the defendant, it is for the best interest of the child, Sharon Sue Thomas, that said child be placed in the custody of someone else. The court finds that since the birth of Sharon Sue Thomas, her father has conducted himself properly, that he has acted as both father and mother to said child; that he has cared for said child on practically all occasions except when said child was in the custody of the Oklahoma Baptist Orphanage at Oklahoma City, Oklahoma, for a period of nine months under court decree, and when said child was in divided custody by order of this court, all until on or about the 9th day of January, 1957. The court finds that on January 9th, 1957, at the suggestion of various public officials, judicial officers, welfare agencies and church groups, plaintiff agreed to the placement of his minor child in the home of a respectable and childless couple in Oklahoma City, where

she remained until the decree of the Supreme Court aforesaid, during which time said child was well cared for; the court further finds that said child at this time is not well cared for and that her health and welfare is in jeopardy by virtue of the type and character of her custodian and her relatives; that were it not for the fact that plaintiff has no home nor female relatives to care for said child, he would be a fit and proper custodian for said child. Until such time as the proper court determines the person or institution to have custody of said child, plaintiff should have her custody." Following the above judgment appellee refused to obey it and removed the child to Little Rock, Arkansas.

The present action was brought on January 13, 1958, in Pulaski Chancery Court by the father (appellant) to enforce the above Oklahoma judgment of the Pittsburg County District Court. On February 21, 1958, following a trial, the Pulaski Chancery Court entered a decree holding: . . . "that the conditions and circumstances upon which the judgment of the District Court of Pittsburg County Oklahoma was based have changed and the defendant is entitled to the custody of her child and it will be to the best interest of said child that she be placed in custody and control of defendant." This appeal followed.

For reversal appellant contends: "1. Appellee failed to show a change of conditions since the Oklahoma judgment or any material facts existing at the time of the judgment which were unknown to the Court. 2. The Oklahoma judgment is entitled to be enforced under the full faith and credit clause of the United States Constitution."

We agree with both of appellant's contentions. We said in the very recent case of *Coder* v. *Coder,* 226 Ark. 478, 290 S. W. 2d 628, "We have repeatedly held that a decree of another state fixing the custody of a child is final on conditions then existing, and should not be changed thereafter by a decree of a court of this state unless on conditions altered since the decree of the other

state, or on material facts existing at the time of the decree of the other state but unknown to that court, and then only for the welfare of the child, (citing many cases) . . . All of these cases, and many others, also hold that the welfare of the child must be considered.''

Since coming to Little Rock appellee has been working. She leaves Sharon Sue with her father and mother. She testified: (appellant's abstract) ''We have a four room apartment with two bedrooms. We have one bed in each bedroom. The little boy sleeps on the divan in the front room and Sharon sleeps with me. My mother and father sleep in the other bedroom. My brother and his wife are there temporarily and they sleep in the front room. My brother is a cab driver and he had to move in with us when he lost his job. There is plenty of room in the apartment . . . '' The testimony showed that appellee, her father, mother, brother and sister-in-law all drank intoxicating liquor in the apartment. ''The court: All of you drink in that family, you and your wife and your son and his wife? A. (appellee's father) Not excessive.'' For most of the time since coming to Arkansas eight people have lived in the crowded apartment. Appellee is not now and it appears has never united with any church and does not attend church. She has never taken, or sent, Sharon Sue to church or Sunday school. It appears certain from the evidence that Sharon Sue has had no religious training. Appellee testified: ''Q. Did she (Sharon) attend Sunday School one single time? A. We have not yet, but I don't know where to go.'' We do not attempt to detail all the testimony, it suffices to say that after a review of the entire record we have concluded that the preponderance thereof shows no such change in conditions as would warrant awarding the custody of this little girl to its mother.

The decree is reversed and the cause remanded with directions to award Sharon Sue's care and custody to her father (appellant) in accordance with the judg-

ment of the Pittsburg County District Court of Oklahoma, to which judgment we must, and do, give full faith and credit.

WILLIAM J. SMITH, J., not participating.