## J. H. SHAW v. Mary Gay SHAW

5-5672                                                473 S.W. 2d 848

Opinion delivered December 20, 1971

*Tackett, Young, Patton & Harrelson,* for appellant.

*Harkness, Friedman & Kusin,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee filed a suit for divorce against appellant in Miller County, Arkansas, on June 12, 1970. In it she sought custody of their minor children. Appellant, appearing specially, demurred on the ground that an action between the parties involving the same subject matter was pending in Texas. This appeal was taken from the court's refusal to order the appellee to deliver the children into the custody of their

father, the appellant. Appellant contends that, by not doing so, the chancery court failed to give full faith and credit to a judgment in the Texas case awarding the custody to appellant. We cannot say that the court failed to give full faith and credit to the Texas decree, under the circumstances prevailing, so we affirm.

Appellee filed a suit for divorce in Brazoria County, Texas, on July 21, 1969. She then had custody of the three minor children involved and asked that permanent custody be awarded to her. She was awarded temporary custody in that action. This action was tried to a jury on January 12, 1970. In its verdict on interrogatories, the jury found that both parents were fit persons to have custody of the children, but that custody should be awarded to the father instead of the mother. A divorce was granted to appellant. The decree, based upon the jury verdict, was dated May 7, 1970. Appellee took an appeal which was never perfected.

On November 19, 1970, a hearing was had in the Chancery Court of Miller County. It was then suggested that appellee had given notice of appeal in the Texas case and that her motion for new trial had been overruled on August 24, 1970. Testimony was given that appellee had lived with her mother in Fouke since July 1969, that the children were all enrolled in school there, attended regularly and their grades were better than ever before, that appellant was substantially delinquent in the payment of child support granted in the Texas proceeding, and that appellant had made no attempt to visit his children. Mrs. Shaw, the appellee, was attending an adult education class studying to qualify as a medical records clerk. Mrs. Shaw's mother had lived in the community for 32 years and was employed. It was stipulated that the home was adequate and that appellee was taking good care of the children. The court then took appellant's demurrer under advisement until it was shown that a decree in the Texas case had become final. It awarded temporary custody of the children to appellee in the interim.

On September 28, 1970, appellee amended her petition to seek permanent custody of the children on the

basis of changed circumstances. She alleged that the children had resided in Miller County for more than one year, that appellant had failed and refused to pay child support to the extent that arrearages of $3,000 had accumulated. She asserted that the welfare of the children would. best be served by their remaining with her in Arkansas.

Appellant's petition that the chancery court give full faith and credit to the Texas decree was served on appellee on December 28, 1970. He alleged that appellee's motion for new trial and amended motion for new trial had been overruled on June 4, 1970, and that appellee's right of appeal had been foreclosed by her failure to file a bond for costs. At a hearing on this petition held February 1, 1971, appellant asked that the court direct the sheriff to deliver the children into his custody pursuant to the Texas decree. Appellee then directed the court's attention to the fact that she had filed a petition in another proceeding which was then pending in the Chancery Court of Miller County, seeking custody of the children upon the basis of changed circumstances since the Texas decree was entered. She asked that the children be left in Arkansas until that petition was heard. The chancellor then sustained appellant's demurrer and dismissed appellee's original petition, but declined to order delivery of the children to appellant because of the new proceeding which he then consolidated with the original one when appellant requested that the pleadings be made a part of the record.

In the new proceeding filed January 14, 1971, she alleged appellant's failure to pay support and medical bills for the children, their school attendance in Miller County, that they were under the care of local physicians, and her own ability to provide a proper home for them. She asserted that removal from the jurisdiction of the Miller Chancery Court would be detrimental to their welfare. She also alleged that appellant was unfit to have custody of the children.

Appellant contends that the trial court did not give full faith and credit to the Texas decree. He relies upon

cases in which we have held that a decree of a court of a sister state is final upon conditions existing at the time of its rendition, citing *Coder* v. *Coder,* 226 Ark. 478, 290 S. W. 2d 628; *Turner* v. *Dodge,* 212 Ark. 991, 208 S. W. 2d 467; *Hamilton* v. *Anderson,* 176 Ark. 76, 2 S. W. 2d 673. However, this argument overlooks the effect of our holdings in those very cases, i.e., that the foreign decree is final, only on conditions existing at that time, but not res judicata where conditions and circumstances have changed since rendition of the original decree or where material facts existed at the time of the decree but were unknown to the foreign court, and the best interests of the child require modification. These holdings clearly permit modification of a foreign child custody decree upon the same terms upon which modification of a domestic decree may be made. In *Tucker* v. *Turner,* 195 Ark. 632, 113 S. W. 2d 508, cited in *Turner* v. *Dodge,* we said:

> Foreign judgments could have no greater force and effect than the judgments of the courts of this state, acting within their jurisdiction. The judgment of a chancery court in this state, awarding the custody of an infant child to one of the parents, or to any other person, is a final judgment, from which an appeal lies, but it is not res judicata in the same or another court of this state involving the custody of the same child, where it is shown that the conditions under which the former decree was made have changed, and that the best interests of said child demand a reconsideration of said order or decree. If then, a former decree of a court of this state, involving the custody of a minor child, is not res judicata in a subsequent proceeding in the same or some other court of this state, how could it be said that a foreign judgment would be res judicata?

Appellant argues that since there was no evidence in the original Arkansas proceeding which would have justified a change in custody, the chancery court acted erroneously, and that no testimony has been adduced in the later proceeding, and no service obtained. He also asserts that it is obvious that no testimony indicating a

change of circumstances warranting a change in custody can be adduced. We do not agree with these assertions. We have no means of knowing what testimony may be adduced when appellee's petition is heard. The record discloses that warning order was published in the new proceeding and that an attorney ad litem was appointed for appellant.

The real question here turns upon whether the Miller Chancery Court was correct in holding that it had jurisdiction to entertain appellee's latest petition. According to Dr. Leflar, awards of custody in states other than the child's domicile are constitutionally permissible even in the absence of personal jurisdiction over both parents. Leflar, American Conflicts Law 586, et. seq., § 245 (1968). He cites respectable authority to the effect that the presence of the child alone is sufficient if due process is not denied absent claimants. Dr. Leflar refers to the rule stated in Restatement of the Law. Restatement, Second, Conflict of Laws (1971), § 79 reads:

> A state has power to exercise judicial jurisdiction to determine the custody, or to appoint a guardian, of the person of a child or adult
>
> (a) who is domiciled in the state, or
>
> (b) who is present in the state, or
>
> (c) who is neither domiciled nor present in the state, if the controversy is between two or more persons who are personally subject to the jurisdiction of the state.[1]

We find the reasoning in the accompanying Comments to be apt. Some of them are:

> a. Rationale. The subject of jurisdiction over custody and guardianship is made complex by the dif-

---

[1] The current rule is all the more persuasive because it represents a complete "about-face" from the former rule which eliminated all jurisdiction-fixing factors except domicile of the child. Restatement, Conflict of Laws (1934) 177, § 117. The change seems to have resulted from the frequent judicial rejection of the earlier Restatement rule. (Footnote ours.)

ferent interests involved, and by the number of states which may be concerned. First, there is the welfare of the child, which is of paramount importance. Second, there is the interest of the state of the child's domicil and, if he is absent from that state at the time of suit, there is the interest of the state where he happens to be physically present at the time. Third, there are the interests of those (normally the parents) who are disputing among themselves for the child's custody.

The existence of these conflicting interests has given rise to three different bases of jurisdiction. One proceeds on ground that custody is a question of status and hence is subject to the control of the state where the child is domiciled. This basis is supported by the fact that usually the state of a child's domicil is the one most deeply concerned with his welfare. A second jurisdictional basis is the presence of the child in the state. The state where the child is physically present has the most immediate concern with him; its courts also have direct access to the child and may be most qualified to decide what will best redound to his welfare. Finally, a state has power to determine a child's custody or guardianship as between persons (normally the parents) who are competing for it and over whom it has personal jurisdiction. This jurisdictional basis places emphasis upon the interests of those who are seeking control over the child. It does not, however, lose sight of the child's own welfare, since a court can better determine which of two parties is more fitted to have control over the child when it has both of them before it.

When all three bases of jurisdiction are found in a single state, that state may exercise jurisdiction to determine the child's custody. So a state may determine a child's custody if the state has personal jurisdiction over the contending parties and the child is both domiciled and physically present within its territory. Complexities arise, however, when these bases are divided. Statements are often to be

found in the opinions that one or another of these bases must be regarded as exclusive and that no other one will do.

In point of fact, each of these bases of judicial jurisdiction provides a reasonable and suitable basis upon which a court may proceed in a proper case. The state in which the child is physically present must have power to take the necessary steps for his protection; the state which has personal jurisdiction over those competing for the custody provides a convenient forum in which to try the issue; and lastly the state of the child's domicil will usually have the greatest concern with his welfare. As a result, there will be situations where three states have concurrent judicial jurisdiction: namely, the state of the child's domicil, the state where he is physically present at the time of suit and the state which has personal jurisdiction over those (normally the parents) who are competing for his custody.

This is not to say, however, that a court which has jurisdiction on any one of these bases will necessarily entertain the suit. A court of the state of the child's domicil will usually do so because of the obvious interest of this state in the child's welfare. On the other hand, a court of a state where the child is only physically present at the time will refuse to entertain the action unless it believes this to be necessary for the best interests of the child. A suit may likewise be dismissed if the court has reason to believe that its decree would not be effective as might be the case if both the child and the defendant parent are in another state.

In cases discussing the three different jurisdictional bases, other courts have supported the quoted Restatement position on the basis that any state which has a sufficient social interest in the welfare of a child has jurisdiction in custody matters, even though jurisdiction may exist in two or more states simultaneously. See, e.g., *Casteel* v. *Casteel*, 45 N. J. Super. 338, 132 A. 2d 529 (1957); *Wallace* v. *Wallace*, 63 N. M. 414, 320 P. 2d

1020 (1958); *Sampsell* v. *Superior Court*, 32 Cal. 2d 763, 197 P. 2d 739 (1948). The language of Mr. Justice Traynor in *Sampsell* seems particularly applicable. He said:

> In the interest of the child, there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction.
>
> \* \* \*
>
> Thus, if the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody. It does not follow, however, that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there. On the other hand, if the jurisdiction of one state has been exercised over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction, which might be exercised in the interest of the child "with respectful consideration to the prior determination of other courts similarly situated." Stansbury, 10 Law and Contemp. Problems, supra at 830-831. See Foster v. Foster, 8 Cal. 2d 719, 726, 68 P. 2d 719; Titcomb v. Superior Court, supra, 220 Cal. 34, 39, 29 P. 2d 206. In any event, there is no reason why courts of one state should not be able to "assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child." Miller v. Schneider, Tex. Civ. App., 170 S. W. 2d 301, 303.
>
> The problem is not one of rendering custody decrees for the courts of other states to regard as final and conclusive determinations. Indeed such decrees are not given conclusive effect in our own courts, \*\*\*.

We hold that physical presence of the children in this state is a proper basis for the exercise of jurisdiction by the Miller Chancery Court to determine whether there should be a change in custody of the children involved. The fact that the decree of that court might not be accorded extraterritorial effect should not limit the power of the courts of this state to act for the best welfare of children physically present within their territorial jurisdiction and to treat them as its wards, at least when their presence is not purely transient. See *Keneipp* v. *Phillips*, 210 Ark. 264, 196 S. W. 2d 220; *Pope* v. *Pope*, 239 Ark. 352, 389 S. W. 2d 425; *Tucker* v. *Turner*, 195 Ark. 632, 113 S. W. 2d 508. The General Assembly has clearly made a policy determination which supports this view. A guardian who would have custody of a minor may be appointed by the probate court of a county in which he resides, even though he may be domiciled elsewhere. Ark. Stat. Ann. §§ 57-601, 606, 620, 625 (Supp. 1969). This statutory determination can only be based on the premise that this state has such an interest in the welfare of a minor living within its borders that its courts should take such action as may be necessary to provide for its best welfare.

Since the chancery court had jurisdiction to act upon appellee's petition, its decree denying immediate delivery of the children to appellant is affirmed.

Byrd, J., dissents.